**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-031

Filing Date: February 7, 2012

Docket No. 30,123

CAROLYN MASCAREÑAS,

      **Plaintiff-Appellant,**

v.

**CITY OF ALBUQUERQUE and
MIKE TORRES, Parking Division Director,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Theresa M. Baca, District Judge

Paul S. Livingston
Placitas, NM

for Appellant

French & Associates, P.C.
Paula I. Forney
Stephen G. French
Albuquerque, NM

for Appellees

**OPINION**

**WECHSLER, Judge.**

**{1}**    After the City of Albuquerque's personnel board (the personnel board) determined that Defendant City of Albuquerque (the City) had just cause to terminate Plaintiff Carolyn Mascareñas, Plaintiff filed a single complaint in district court appealing the personnel board's decision and alleging constitutional, contract, and statutory claims against the City. Plaintiff appeals two district court orders in this case: (1) an order affirming the decision of the personnel board, determining that the City had just cause in terminating Plaintiff's

1

employment with the City; and (2) an order dismissing Plaintiff's due process, breach of contract, and Family Medical Leave Act (FMLA) claims on the ground that the claims or the factual predicates of the claims were litigated in the prior personnel board proceedings. In this appeal, Plaintiff argues that (1) the personnel board's decision was arbitrary, not in accordance with the law, and not supported by the facts, and (2) the district court erred by dismissing Plaintiff's due process, breach of contract, and FMLA claims on preclusion grounds. We hold that (1) because Plaintiff did not file a timely petition for writ of certiorari pursuant to Rule 12-505 NMRA, we lack jurisdiction to consider Plaintiff's appeal of the personnel board's decision; and (2) the district court did not err in concluding that res judicata barred Plaintiff's breach of contract claim, and collateral estoppel precluded litigating the factual predicates of Plaintiff's due process and FMLA claims. Accordingly, we affirm.

**BACKGROUND**

**{2}** The City employed Plaintiff for more than seventeen years. She worked as a clerk for the City's Parking Division of the Municipal Development Department (the Department), which was managed by Mike Torres beginning in late 2004. Shortly after he took over the Department and continuing through 2005, Torres inflicted "progressive discipline" upon Plaintiff.

**{3}** On January 3, 2005, Torres gave Plaintiff an "[o]fficial [v]erbal [w]arning" for late arrivals to work. Despite the verbal warning, Torres remained unsatisfied with Plaintiff, and Torres issued Plaintiff a pre-determination hearing notice on March 16, 2005, due to continued tardiness, abuse of her lunch hour, failing to call when arriving late or taking sick leave, and being late returning from appointments. After the hearing, the City issued Plaintiff a letter of reprimand on March 28, 2005, which was held in abeyance for three months. Plaintiff received another "verbal letter of reprimand" on June 10, 2005 for lunch break and work break abuse, patterns of absence on Mondays or Fridays, failure to begin work in a timely manner, and excessive personal use of the telephone. On August 2, 2005, Plaintiff's immediate supervisor, Shalene Andujo, gave Plaintiff another notice of pre-determination hearing for similar problems with tardiness; failure to call when arriving late or sick, to obtain permission to work through her lunch hour, to submit proper forms when taking leave, and to process four checks that were found in envelopes on her desk; and other work performance issues related to processing traffic citations and warrants. After a hearing, the City issued Plaintiff a three-day suspension and sent Plaintiff and Andujo to mediation, which resulted in Plaintiff agreeing to arrive at her job on time and complete her assigned tasks.

**{4}** On August 14, 2005, Plaintiff submitted an application for leave under the FMLA to care for her husband and children due to her husband's disability. The leave was intermittent leave that was to be taken whenever her husband's condition worsened and needed to be approved on an as-needed basis. On September 2, 2005, the City's human resources department notified Plaintiff that it approved the FMLA leave retroactive to

August 14, 2005.

**{5}** Plaintiff did not take any of the intermittent FMLA leave until the afternoon of September 26, 2005. Earlier that day, Plaintiff was issued a notice of investigation, claiming that Plaintiff "was being investigated for matters associated with her work." Upon receiving the notice, Plaintiff became visibly upset and raised her voice in protest of the investigation. At roughly 2:00 p.m., Plaintiff left work after having placed a leave form on Andujo's desk without consulting her. Plaintiff did not return to work on September 27, 2005. On September 28, 2005, she told Andujo during a telephone conversation that she was on FMLA leave for September 26-28, and Andujo informed Plaintiff that she needed a doctor's note regarding her husband's condition for the days she was absent from work.

**{6}** On September 28, 2005, Plaintiff was hand delivered, at her home, a notice of pre-determination hearing related to her work absence since September 26, 2005, her continued late arrivals to work, and her failure to call prior to her shift when she was late. Plaintiff did not appear for the hearing related to these charges scheduled for October 6, 2005, and the hearing was rescheduled for October 13, 2005. Plaintiff did not attend the rescheduled hearing, and it was held without her presence. At the conclusion of the hearing, the hearing officer recommended a fifteen-day suspension, which Plaintiff did not appeal to the personnel board.

**{7}** The human resources department sent Plaintiff a letter on October 10, 2005, requiring that Plaintiff submit, by October 11, 2005, medical information regarding her husband's condition in order to recertify her FMLA leave. Plaintiff did not provide any medical information to the human resources department.

**{8}** On October 21, 2005, Plaintiff was again given a notice of a pre-determination hearing set for October 29, 2005, concerning allegations that she was on unauthorized leave since September 26, 2005. Plaintiff presented a doctor's note at the hearing, stating that she should be excused from work on days her husband's condition flared up, but did not mention when or if his condition had recently flared up. The hearing resulted in Plaintiff receiving a fifteen-day suspension.

**{9}** The next day, on October 27, 2005, human resources director Pat Miller informed Plaintiff that her FMLA leave was cancelled due to a lack of medical documentation, retroactive to September 26, 2005. Plaintiff also received a hand-delivered letter on October 28, 2005, notifying her that her FMLA leave was cancelled and that she would be terminated if she did not report to work on October 31, 2005. After Plaintiff did not return to work on October 31, 2005, the Department Director, John Castillo, notified her that the City was terminating her employment.

**{10}** A post-termination hearing took place over a three-day period, in which Plaintiff argued that she was terminated without just cause. During the hearing, Plaintiff argued that she was a good and productive employee for seventeen years and that her problems with

3

Torres and Andujo resulted from a longstanding grudge Torres had with Plaintiff's husband. Plaintiff also argued that the City failed to provide her with a performance evaluation and that her supervisors failed to refer the disciplinary actions taken against Plaintiff to the City's mediation coordinator, contrary to the City's merit system ordinance. *See* Albuquerque, N.M., Code of Ordinances, ch. 3, art. 1, §§ 3-1-1 to -28 (1978, as amended through 2010).

**{11}** The hearing officer concluded that the City did not give Plaintiff a performance evaluation, contrary to Section 3-1-9(C) of the merit system ordinance, and that the City failed to refer the disciplinary actions to the City's mediation coordinator, contrary to Section 3-1-23(C) of the merit system ordinance. However, the hearing officer concluded that both of these violations of the merit system ordinance by the City were harmless error. The hearing officer also found that Plaintiff failed to abide by the City's personnel rules and regulations, that the City provided appropriate progressive discipline, and that Plaintiff did not provide valid documentation to support her FMLA leave. Further, the hearing officer determined that the City properly notified Plaintiff to return to work on October 31, 2005 or be considered to have quit her job, that Plaintiff failed to return to work, and she had testified that she "did not return to work because she chose not to." The hearing officer therefore concluded that just cause supported Plaintiff's termination. The personnel board upheld the recommendation of the hearing officer by a 3-1 vote.

**{12}** Plaintiff filed a complaint in district court on December 15, 2006, containing four claims. The first claim was a notice of appeal of the personnel board's decision (the administrative appeal), pursuant to Rule 1-074 NMRA and Section 3-1-25(F) of the merit system ordinance. Plaintiff subsequently filed a statement of appellate issues related to the administrative appeal, pursuant to Rule 1-074(K). The second, third, and fourth claims (the civil complaint) alleged that the City violated Plaintiff's due process rights; breached the implied employment contract consisting of the merit system ordinance, the City's personnel rules and regulations, and the collective bargaining agreement between the City and City employees; and abridged Plaintiff's rights under the FMLA.

**{13}** The City answered Plaintiff's complaint, filed a demand for a twelve-person jury for the civil complaint, and filed a response to Plaintiff's statement of appellate issues. Plaintiff subsequently filed a reply to the City's response. While the parties awaited the district court's decision on the administrative appeal, the district court erroneously dismissed the case for lack of prosecution on November 26, 2007. Plaintiff filed a motion to reinstate, informing the district court that the parties had fully briefed the administrative appeal and were awaiting the district court's decision. Additionally, Plaintiff argued that the civil complaint, outside of the administrative appeal, would be litigated once the district court decided the administrative appeal. The district court reinstated the case and on April 15, 2008, filed a memorandum opinion and order affirming the decision of the personnel board. The district court also "discarded" Plaintiff's civil complaint, stating that Plaintiff had not exhausted administrative remedies and that the same issues were covered by the administrative appeal.

**{14}** Plaintiff filed a motion for reconsideration on April 29, 2008, essentially arguing that the civil complaint and the administrative appeal raised separate issues. The City responded, arguing that the district court did not err under the law of the case doctrine. The district court reinstated the civil complaint on July 28, 2008, but it did not reinstate the administrative appeal. At a scheduling conference held on January 21, 2009, the district court set the case on its November 2-20, 2009 docket and set August 7, 2009 as the deadline for all dispositive motions.

**{15}** Represented by new counsel, on September 8, 2009, the City filed a motion for judgment of dismissal or, in the alternative, to vacate trial. The City's brief erroneously stated that the district court had not reinstated the civil complaint. In addition, the City argued that res judicata barred the breach of contract claim and that collateral estoppel or the law of the case doctrine precluded the due process and FMLA claims because the personnel board decided the factual predicates of each claim. After a hearing, the district court granted the City's motion and issued an order dismissing the civil complaint.

## JURISDICTION OVER ADMINISTRATIVE APPEAL

**{16}** Plaintiff argues that the district court erred by affirming the decision of the personnel board in its memorandum opinion and order on April 15, 2008. In particular, Plaintiff claims that the personnel board's decision was arbitrary, not in accordance with the law, and not supported by facts because (1) the City failed to hold a pre-termination hearing on the termination charges, (2) the personnel board failed to consider favorable testimony, and (3) the City's actions regarding Plaintiff violated the FMLA and various City ordinances. The City, on the other hand, argues that this Court lacks jurisdiction to address the district court's order affirming the personnel board because Plaintiff did not file a petition for writ of certiorari pursuant to Rule 12-505. The City also asserts that because Plaintiff did not timely file a petition for writ of certiorari and therefore exhausted her ability to have the personnel board's decision reviewed, issue preclusion bars Plaintiff from challenging the factual findings of the district court's April 15, 2008 order affirming the personnel board.

**{17}** We first address the City's argument that this Court lacks jurisdiction over the administrative appeal. *See State ex rel. Dep't of Human Servs. v. Manfre*, 102 N.M. 241, 242, 693 P.2d 1273, 1274 (Ct. App. 1984) ("[W]e have a duty to determine whether [we have] jurisdiction of an appeal[.]"); *In re Doe, III*, 87 N.M. 170, 171, 531 P.2d 218, 219 (Ct. App. 1975) ("[L]ack of jurisdiction at any stage of the proceedings is a controlling consideration which must be resolved before going further[.]"). The City bases its argument on Plaintiff's failure to file a petition for writ of certiorari pursuant to Rule 12-505. Specifically, the City contends that Plaintiff impermissibly combined her appeal of the district court's order affirming the personnel board with the appeal of the order dismissing the civil complaint and that a writ of certiorari is "the only method for obtaining review by this Court" of the administrative appeal.

**{18}** As noted, Plaintiff brought the administrative appeal pursuant to Rule 1-074, which

5

governs a district court's appellate jurisdiction over appeals from administrative decisions or orders when there is a statutory right of review. Once a district court sitting in its appellate capacity has rendered a final order or decision on a Rule 1-074 appeal, further review by this Court is governed by Rule 12-505. *See* Rule 12-505(A)(1) ("This rule governs review by the Court of Appeals of decisions of the district court . . . from administrative appeals pursuant to Rule 1-074[.]"). Rule 12-505(B) provides that a "party aggrieved by the final order of the district court . . . may seek review of the order by filing a petition for writ of certiorari with the Court of Appeals, which may exercise its discretion whether to grant the review." Rule 12-505(C) requires that the petition for writ of certiorari be filed within thirty days of the final action by the district court.

**{19}** Plaintiff did not file a petition for writ of certiorari for the administrative appeal after the dismissal of the entirety of the complaint. When the district court granted the City's motion for judgment of dismissal or to vacate trial and issued an order of dismissal on November 4, 2009, Plaintiff filed a notice of appeal pursuant to Rule 12-201(A)(2) NMRA on December 4, 2009, challenging the order of dismissal of the civil complaint. It was not apparent that Plaintiff intended to challenge the district court's order affirming the personnel board until Plaintiff filed her docketing statement on January 4, 2010, which included the appeal of the personnel board's decision as one of her appellate issues. We therefore address (1) whether the inclusion of the administrative appeal in the docketing statement was sufficient in form to comply with Rule 12-505 as a non-conforming petition for writ of certiorari, and (2) if so, whether Plaintiff's non-conforming petition for writ of certiorari was timely under Rule 12-505(C) even though the docketing statement was not filed within the thirty-day period.

**{20}** This Court has recently addressed whether a timely notice of appeal and docketing statement are an adequate substitute for a petition for writ of certiorari. In *Wakeland v. New Mexico Department of Workforce Solutions*, 2012-NMCA-021, ¶ 13, 274 P.3d 766 (No. 31,031, filed Sept. 27, 2011), this Court determined that a notice of appeal alone is not an adequate substitution for a petition for writ of certiorari. *See also Roberson v. Bd. of Educ. of the City of Santa Fe*, 78 N.M. 297, 299-300, 430 P.2d 868, 870-71 (1967) (holding that a notice of appeal was an insufficient substitute for a petition for writ of certiorari). However, because "New Mexico courts have not been stringent about the form and content requirements of documents filed in an effort to seek appellate review," a docketing statement complying with the substantive requirements of Rule 12-208(D) NMRA is an adequate substitute for a petition for writ of certiorari. *Wakeland*, 2012-NMCA-021 ¶¶ 7, 16; *see also Audette v. City of Truth or Consequences*, 2012-NMCA-011, ¶ 5, 270 P.3d 1273 (No. 30,988, filed Sept. 27, 2011) ("[A] docketing statement that substantially complies with the content requirements for a petition for writ of certiorari will be accepted as a petition despite the fact that its form and content do not precisely comply with the requirements of Rule 12-505.").

**{21}** However, in *Wakeland*, we held that a non-conforming petition for a writ of certiorari, such as a docketing statement, must be filed within thirty days after the order to

6

be reviewed, as required by Rule 12-505(C). *Wakeland*, 2012-NMCA-021, ¶ 18. We noted that parties seeking to substitute a docketing statement for a petition for writ of certiorari will often not meet the thirty-day time requirement due to the procedural differences governing appeal as of right and the rules governing discretionary review. *Id.*; *see* Rule 12-201(A)(2) (requiring the notice of appeal be filed within thirty days of the judgment or order appealed from); Rule12-208(B) (requiring that the docketing statement be filed within thirty days of the notice of appeal). We stated that, because "the time requirement for filing a petition for writ of certiorari is a mandatory precondition to the exercise of an appellate court's jurisdiction to review a petition on its merits[,]" a petitioner must file the docketing statement within thirty days in order to be considered as a timely non-conforming petition for writ of certiorari. *Wakeland*, 2012-NMCA-021, ¶ 18.

**{22}** Applying *Wakeland* and *Audette*, we construe Plaintiff's docketing statement as a non-conforming petition for writ of certiorari. However, Plaintiff filed her docketing statement on January 4, 2010, which was sixty days after the district court entered its order dismissing the complaint. Therefore, although we accept her docketing statement as a non-conforming petition for writ of certiorari, it was untimely under Rule 12-505(C).

**{23}** When a petition for writ of certiorari is untimely, this Court will not excuse untimely filing "absent a showing of the kind of unusual circumstances that would justify an untimely petition." *Wakeland*, 2012-NMCA-021, ¶ 20. Our Supreme Court has stated that unusual circumstances justifying the untimely filing of a petition for writ of certiorari exist when (1) there is error on the part of the court, or (2) "when the filing is not very late, and there are other unusual circumstances that were not caused by the court system but that were not within the control of the party seeking appellate review." *Id.*

**{24}** Plaintiff does not argue, nor do we conclude, that unusual circumstances justify the untimely filing of the docketing statement. Plaintiff filed the docketing statement thirty days after the thirty-day period prescribed by Rule 12-505(C), and there is no claim of error on the part of the district court. The only apparent reason that Plaintiff did not file a petition for writ of certiorari for the administrative appeal after the dismissal of the complaint was because she believed that it was procedurally valid to include the administrative appeal in the notice of appeal and docketing statement for the civil complaint. However, the procedures governing this Court's review of appeals from the personnel board pursuant to Rule 1-074 are well established. *See* Rule 12-505(A)(1) (stating that Rule 12-505 governs district court decisions addressing administrative appeals pursuant to Rule 1-074); *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 7, 149 N.M 379, 249 P.3d 510 (addressing the merits of an appeal from the personnel board after noting that this Court granted a petition for writ of certiorari pursuant to Rule 12-505). Further, this Court has stated that "[s]imply being confused or uncertain about the appropriate procedure for seeking review is not the sort of unusual circumstance beyond the control of a party that will justify an untimely filing." *Wakeland*, 2012-NMCA-021, ¶ 25. This Court lacks jurisdiction to address the merits of Plaintiff's administrative appeal because the appeal was untimely and unusual circumstances do not justify the untimeliness.

7

**PRECLUSION OF CIVIL COMPLAINT**

**{25}**    Plaintiff next argues that the district court erred in dismissing the civil complaint because she was required to file the civil complaint in the same action as her administrative appeal and res judicata does not bar litigation of the FMLA, breach of contract, and due process claims.  The City responds by arguing that the factual predicates of each claim were litigated before the personnel board and therefore collateral estoppel, or issue preclusion, not res judicata, bars re-litigation of those facts, and that, as a result, there are no issues of material fact to support the claims.

**{26}**    Plaintiff supports her argument that she was required to file the civil complaint in the same action as the administrative appeal and that res judicata does not apply by citing *Chavez v. City of Albuquerque*, 1998-NMCA-004, 124 N.M. 479, 952 P.2d 474, *Strickland v. City of Albuquerque*, 130 F.3d 1408 (10th Cir. 1997), and *Mares v. City of Albuquerque*, 173 F.3d 864 (table), No. 98-2118, 1999 WL 224866 (10th Cir. April 19, 1999).  We begin by discussing these cases.

**{27}**    In *Chavez*, 1998-NMCA-004, ¶ 2, the plaintiff filed a complaint in district court alleging breach of contract, denial of his right to privacy, violations of his right to be free from unreasonable searches and seizures, violations of his rights under the Open Meetings Act, NMSA 1978, §§ 10-15-1 to -4 (1974, as amended through 2009), and violations of both his procedural and substantive due process rights following termination for failing a drug test.  The district court granted summary judgment in favor of the city based on res judicata, reasoning that the plaintiff did not and should have raised the claims in his previous grievance before the personnel board. *Chavez*, 1998-NMCA-004, ¶ 3.  This Court reversed on all claims, except for the breach of contract claim, holding that, because the city's grievance process was limited to matters within the purview of the merit system ordinance and the city's personnel rules and regulations, the personnel board did not have jurisdiction over the plaintiff's constitutional or statutory claims. *Id.* ¶¶ 8, 12.  As a result, the district court erred by applying res judicata to the constitutional and statutory claims. *Id.* ¶ 29.  However, this Court affirmed the district court's determination that the plaintiff could have and should have raised his contract claims during the administrative proceeding before the personnel board. *Id.* ¶ 28.

**{28}**    In *Strickland*, 130 F.3d at 1410, the plaintiff filed a grievance after the city terminated his employment for failing a drug test.  The city's personnel board held that just cause supported the termination, and both the district court and this Court affirmed the personnel board's decision. *Id.*  While the personnel board appeal was pending in district court, the plaintiff filed a complaint in federal court asserting fourth amendment and procedural due process violations and various state claims. *Id.*  After the state district court affirmed the personnel board, the federal court granted summary judgment based on res judicata. *Id.*  Applying New Mexico preclusion law, the Tenth Circuit affirmed, holding that regardless of whether the personnel board had jurisdiction over the claims, the plaintiff was

8

required to bring them in state district court during his appeal of the personnel board's decision. *Id.* at 1411-13. Similarly, *Mares*, 1999 WL 224866 at \*4, relied on *Chavez* and *Strickland* in holding that res judicata precluded the plaintiff from asserting constitutional claims in federal court because he should have asserted the claims in a state district court action appealing a decision of the personnel board.

**{29}** We first determine that the district court did not err in holding that *Chavez*, 1998-NMCA-004, ¶ 28, precluded the breach of implied contract claim. Plaintiff based her breach of contract claim solely on the merit system ordinance, the City's personnel rules and regulations, and the collective bargaining agreement governing employment with the City. The personnel board had jurisdiction over this claim, and res judicata prevented Plaintiff from raising the claim in the civil complaint. *See id.* ¶¶ 5, 28.

**{30}** However, regarding the FMLA and due process claims in the civil complaint, we agree with Plaintiff that *Chavez*, *Strickland*, and *Mares* stand for the proposition that res judicata does not bar litigation of Plaintiff's civil complaint based on the district court's order affirming the personnel board. Further, *Strickland* and *Mares* seem to support Plaintiff's argument that res judicata required that Plaintiff file the administrative appeal and civil complaint in the same action, although we note that our state appellate courts have not decided that issue. However, the district court held that collateral estoppel, not res judicata, precluded Plaintiff's FMLA and due process claims. The two doctrines are distinct. As this Court has stated,

> [t]he doctrines of res judicata and collateral estoppel by judgment involve different and distinct principles. Res judicata in its proper application operates where there are identical parties, causes of action, subject matter, and capacities in the two cases; collateral estoppel by judgment arises where the causes of action are different but some ultimate facts or issues may necessarily have been decided in the previous case. Stated another way, where the causes of action in the cases are identical in all respects, the first judgment is a conclusive bar upon the parties and their privies as to every issue which either was or properly could have been litigated in the previous case. But absent the identity of causes of action, the parties are precluded from relitigating only those ultimate issues and facts shown to have been actually and necessarily determined in the previous litigation.

*C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 160, 597 P.2d 1190, 1200 (Ct. App. 1979) (internal quotation marks and citation omitted). We therefore must determine whether the district court erred in applying collateral estoppel to the personnel board's decision.

**{31}** "The doctrine of collateral estoppel fosters judicial economy by preventing the relitigation of ultimate facts or issues actually and necessarily decided in a prior suit."

*Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993) (internal quotation marks and citation omitted). Our Supreme Court has acknowledged that collateral estoppel applies to issues resolved in an administrative agency adjudicative decision to a later civil trial when rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing. *Id.* at 298, 850 P.2d at 1001. For collateral estoppel to preclusively effect litigation, the moving party must show that "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Id.* at 297, 850 P.2d at 1000. Once the moving party has produced sufficient evidence to meet all four elements, the district court must determine whether the party to be estopped had a full and fair opportunity to litigate the issue in the prior litigation. *Id.*

**{32}** In her due process claim, Plaintiff alleged that the City failed to hold a pre-termination hearing, pursuant to her rights under the merit system ordinance, that the ultimatum to return to work was a pretext that she voluntarily left her job, and that the post-termination hearing was unlawful because the hearing officer refused to consider evidence favorable to Plaintiff. The personnel board found, and the district court affirmed, factual findings that negate these allegations. Both the personnel board and the district court found that an adequate pre-termination hearing took place on October 26, 2005, which resulted in Plaintiff being informed to report to work on October 31, 2005, or face termination. Further, the district court found that there was no indication that the hearing officer did not consider all the evidence presented.

**{33}** With regard to Plaintiff's FMLA claim, Plaintiff alleged that she was entitled to FMLA leave to care for her husband and children due to her husband's physical disability. *See* 29 U.S.C.A. § 2612(a)(1)(C) (2009) (providing that eligible employees are entitled to twelve workweeks of leave per twelve-month period to care for a spouse or child that has a serious medical condition). Plaintiff further claimed that she properly certified the FMLA leave to which she was entitled, pursuant to 29 U.S.C.A. Section 2613(a) (2009), that the City's demand for recertification was unreasonable, and that the City violated 29 C.F.R. Section 825.110(d) (2011) by retroactively denying Plaintiff's FMLA leave. Again, the personnel board found, and the district court affirmed, factual findings that negate these allegations. The personnel board found that Plaintiff provided no valid documentation to support taking intermittent FMLA leave to support her absence from work from September 26, 2005 through October 31, 2005. The district court elaborated that the City was well within its rights to require Plaintiff to recertify her FMLA after taking her first day of leave on September 26, 2005, because of the unusual circumstances regarding her departure on that day and that, because she failed to properly recertify the leave after September 26, 2005, there was no retroactive denial of Plaintiff's FMLA leave.

**{34}** The City has made a prima facie showing that collateral estoppel applies to these findings. First, Plaintiff and the City were identical parties to the hearing before the

10

personnel board.  Second, the cause of action in the personnel board hearing was different from the due process and FMLA causes of action in this case.  *See Chavez*, 1998-NMCA-004, ¶ 12 (stating that the personnel board has limited authority to administer the merit system ordinance and that it has no authority to decide constitutional or statutory claims).  Third, as the findings of the personnel board indicate, the issues of whether there was an adequate pre-termination hearing, whether Plaintiff voluntarily left her job, whether Plaintiff properly applied for and certified FMLA leave, and whether the FMLA leave was retroactively rescinded were actually litigated in the personnel board hearing.  Fourth, the issues were necessarily decided in the personnel board hearing.  The personnel board decided the issue of whether the City had just cause under the merit system ordinance to terminate Plaintiff's employment.  The personnel board considered whether the City granted Plaintiff's FMLA leave and subsequently retroactively rescinded it, because it was necessary to consider the issue of whether Plaintiff voluntarily abandoned her employment.  Further, because the merit system ordinance requires  a pre-termination hearing, the personnel board must have determined that the City held a proper pre-termination hearing in finding that the City provided appropriate discipline to Plaintiff.

**{35}**     Turning now to the question of whether the parties had a full and fair opportunity to litigate, we employ the two-part inquiry described in *Rex, Inc. v. Manufactured Housing Committee*, 119 N.M. 500, 505, 892 P.2d 947, 952 (1995).  First, we examine "whether the non-movant had . . . incentive to vigorously litigate the prior action."  *Id.*  In this case, because the issue addressed in the personnel board hearing was whether the City had just cause to terminate Plaintiff's employment, we cannot say that she did not have the incentive to vigorously litigate.  *See Larsen v. Farmington Mun. Sch.*, 2010-NMCA-094, ¶ 12, 148 N.M. 926, 242 P.3d 493 (holding that the plaintiff had a full and fair opportunity to litigate in an arbitration proceeding challenging his termination from employment); *cf. Reeves v. Wimberly*, 107 N.M. 231, 235, 755 P.2d 75, 79 (Ct. App. 1988) (holding that the plaintiff had "ample opportunity and incentive" to fully litigate when the issue at stake was the only issue in the prior case).

**{36}**     The second part of our inquiry is "whether procedural differences between the two actions, such as representation by counsel, presentation of evidence, questioning of witnesses, and appellate review, would make preclusion unfair, and whether policy considerations exist to deny any preclusive effect.  *Rex, Inc.*, 119 N.M. at 505, 892 P.2d at 952.  During the personnel board hearing, both parties were entitled to be and were represented by counsel.  The hearing took place over a three-day period, and the parties submitted written briefs at the close of the hearing.  Both parties submitted exhibits and presented witness testimony, and the hearing officer was entitled to subpoena witnesses and compel production of relevant documents.  *See* Albuquerque, N.M., Code of Ordinances § 3-1-25(H).  Further, the merit system ordinance requires that the hearing officer be an attorney licensed to practice in New Mexico or experienced in employee relations or personnel administration.  *See id.* § 3-1-26(C).  The hearing officer must issue factual findings and conclusions of law, and the decision is approved or rejected by a vote of the entire personnel board.  *See id.* § 3-1-25(C), (E).  The plaintiff is then entitled to an appeal

11

as a matter of right in district court. *See id.* § 3-1-25(F). Considering the procedures, it would not be unfair to apply collateral estoppel to a personnel board's decision. *See Larsen*, 2010-NMCA-094, ¶¶ 10-12 (upholding district court's application of collateral estoppel when the plaintiff presented evidence, cross-examined witnesses, testified on his own behalf, and was represented by counsel); *cf. Shovelin*, 115 N.M. at 301, 850 P.2d at 1004 (holding that this factor weighs against application of collateral estoppel in an unemployment case because the hearing was two-and-one-half hours, provided minimal time for discovery, and was conducted by telephone). The district court did not err in applying collateral estoppel in dismissing Plaintiff's civil complaint based on the factual determinations made by the personnel board.

**CONCLUSION**

**{37}** We hold that (1) because Plaintiff did not file a timely writ of certiorari pursuant to Rule 12-505, this Court lacks jurisdiction to consider Plaintiff's appeal of the personnel board's decision; and (2) the district court did not err in concluding that res judicata barred Plaintiff's breach of contract claim, and collateral estoppel precluded litigating the factual predicates of Plaintiff's due process and FMLA claims. Accordingly, we affirm.

**{38}    IT IS SO ORDERED.**

 

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *Mascarenas v. City of Albuquerque*, No. 30,123**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-AC | Arbitrary and Capricious Actions |
| AL-DU | Due Process |
| AL-JR | Judicial Review |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-CF | Certiorari |
| AE-DS | Docketing Statements |
| AE-NA | Notice of Appeal |

| AE-PA | Preservation of Issues for Appeal |
| AE-TA | Timeliness of Appeal |

| **CP** | **CIVIL PROCEDURE** |
| CP-CE | Collateral Estoppel |
| CP-RJ | Res Judicata |

| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |

| **CN** | **CONTRACT** |
| CN-BR | Breach |

| **EL** | **EMPLOYMENT LAW** |
| EL-GR | Employee Grievances |
| EL-TE | Termination of Employment |

| **FL** | **FEDERAL LAW** |
| FL-FM | Family Medical Leave Act |

| **GV** | **GOVERNMENT** |
| GV-MU | Municipalities |

| **JD** | **JURISDICTION** |
| JD-AJ | Appellate Jurisdiction |
| JD-CA | Court of Appeals |